IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                                               No.  2:22-cr-20093-MSN

JASON HOLMES,

        Defendant.

---

DEFENDANT'S PRE-TRIAL MOTION TO SUPPRESS STATEMENT
---

        Comes now the defendant Jason Holmes, by and through appointed counsel, Kafahni Nkrumah, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, to suppress any statements or admissions alleged to have been made by Mr. Holmes.  Mr. Holmes statement was not a voluntary and knowing, intelligent, voluntary waiver of his Fifth and Fourteenth Amendment rights.

**FACTS**

        Mr. Jason Holmes is the owner-operator of Holmes Cleaning, a home cleaning service. On October 15, 2021, Mr. Holmes was at a residence within the NSA Mid-South, a military base, performing a home cleaning job that he had been contracted to perform.  When Mr. Holmes arrived at the military base, he was meet at the front gate by the homeowner, Ms. V. Minnich.  Mr. Holmes, initially, was not allowed to enter the base in his vehicle.  The guard at the gate instructed Ms. Minnich that she would have to leave her vehicle in the visitor's parking lot which is outside of the gates but within the confines of the military base.  Ms. Minnich got

into Mr. Holmes' vehicle and the pair were allowed to drive through the gate, in Mr. Holmes' vehicle, and they proceeded to go to Ms. Minnich's home.

Once at the home Mr. Holmes began cleaning the home. After about an hour Mr. Holmes asked Ms. Minnich would she mind if he took a break. Ms. Minnich told him that it was okay and while on his break, Mr. Holmes and Ms. Minnich began talking and drinking alcohol. They continued drinking while Mr. Holmes continued to clean the home, and they eventually ended up drinking approximately five (5) large bottles of wine and seven (7) or eight (8) shots of tequila. They also smoked from Ms. Minnich's hookah and Mr. Holmes is unaware what he was smoking. Mr. Holmes states that he and Ms. Minnich were both clearly intoxicated as they sat around and talked. At some point Mr. Holmes left the residence, with Ms. Minnich and her daughter, and drove them to the visitor center to retrieve her vehicle.

Mr. Holmes was sitting in his vehicle, with the engine off, in the visitor's parking lot when he was approached by military police units. The officers exited their vehicles, with their weapons drawn, and took Mr. Holmes out of his vehicle. Mr. Holmes was then handcuffed and placed in the back of one of the patrol vehicles while the officers proceeded to search his vehicle. During the initial search of the vehicle by the officers, they did not find a firearm in the vehicle. The officers searched the vehicle a second time and during this search recovered the firearm.

Before being transported to the military barracks, the military police contacted Mid-south fire and ems for Mr. Holmes because he had been complaining about not feeling well and possibly passing out. Mid-south ems arrived and Mr. Holmes was attended too.

Mr. Holmes was subsequently transported to the military police barracks and he was placed in two or three different interrogation rooms before he was questioned. Mr. Holmes believes that he was in the barracks approximately an hour before the officers came into the

interrogation room and began to interrogate him. Mr. Holmes states that the officers did not read him his Miranda warnings before they began questioning him regarding the events of that evening and about the gun that was found in his vehicle. Mr. Holmes gave the officers a statement.

## LEGAL ARGUMENT

A.  Mr. Holmes' statement was obtained in violation of his constitutional rights

The government must advise a person of his rights under the *Fifth* and *Fourteenth Amendments* before commencing a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). Once advised, an individual may waive the rights, but the waiver must be knowing, intelligent and voluntary. *Miranda*, 384 U.S. at 475; *See United States v. Cooper*, 2016 U.S. Dist. LEXIS 66591*9 (E.D. KY. April 29, 2018) (quoting *Miranda*, 384 U.S. at 475). A waiver of the right to remain silent may be express or implied. *See Franklin v. Bradshaw*, 545 F.3d 409, 414 (6th Cir. 2008). However, it must be made voluntarily, intelligently, and knowingly. *Miranda*, 384 U.S. at 444.

The determine whether a defendant was in "custody" for purposes of applying *Miranda*, the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984); *See Bennett v. Christiansen*, 2020 U.S. App. LEXIS 5280 (6th Cir., Feb. 20, 2020). The defendant does not have to understand every possible consequence of a waiver of the *Fifth Amendment* privilege, but he must know that he could choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time. *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Colorado v. Spring*, 479 U.S. 564, 574 (1987)).

Whether a defendant has waived his *Miranda* rights involves a two-pronged inquiry. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The first prong involves the voluntariness of the confession. *Id.*; *see United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010). Under the three-factor test established by the Sixth Circuit, a confession is involuntary if (1) it was extorted … from the accused by means of coercive activity; (2) the coercive activity was sufficient to overbear the will of the accused; and (3) the accused's will was overborne because of the coercive police activity in question. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (quotations omitted) (quoting *United States v. Rohrbach*, 813 F.2d 142, 144 (8th Cir. 1987).

The second prong of the *Miranda* inquiry focuses on whether the defendant "knowingly and intelligently" relinquished his rights. *Moran*, 475 U.S. at 421. For a waiver to satisfy this prong, the defendant must be fully aware "of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. Like the voluntary prong, this inquiry depends on the "totality of the circumstances surrounding the interrogation…." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *see Hall v. Beckstorm*, 563 Fed. Appx. 338 (6th Cir. 2014).

Intoxication is an additional factor relevant to the voluntariness inquiry, particularly where the intoxication made the mental or physical coercion by police "more effective." *United States v. Chrismon*, 965 F.2d 1465, 1469 (7th Cir. 1992); *Cooper*, 2016 U.S. Dist. LEXIS at 10. As a result, when interrogating officers know or should reasonably have known that a suspect was under the influence of drugs or alcohol, a lesser quantum of coercion may be sufficient to call the voluntariness of his confession into question. *United States v. Carson*, 582 F.3d 827, 834 (7th Cir. 2009); *Murphy v. Ohio*, 551 F.3d 485, 514 (6th Cir. 2009). The Sixth circuit has held that a court must consider alcohol's impact on the voluntariness of a confession on a "case-by-case basis and in view of other circumstances at play." *Montgomery*, 621 F.3d at 572.

After Mr. Holmes was detained and placed into custody, he was transported to the military police barracks for further processing. Once at the station the officers placed Mr. Holmes in three different interrogation rooms before they began questioning him regarding the events that occurred on October 15, 2021. The officers questioned Mr. Holmes, who was in custody, without apprising him of his *Miranda* rights and his statement should be suppressed. The officers did not get a signed waiver form from Mr. Holmes nor did they record the interrogation of Mr. Holmes to show that he verbally waived his rights and agreed to speak to the officers. Mr. Holmes statement must be suppressed for failure of the officers to give Mr. Holmes his *Miranda* warnings before engaging in custodial interrogation.

If this Court determines that Mr. Holmes in fact waived his *Miranda* rights, Mr. Holmes contends that his waiver was not voluntarily, intelligently, or knowingly made because of his intoxication and the officers taking advantage of Mr. Holmes condition to coerce him to give a statement. The totality of the circumstances will show that it was clear to the officers that Mr. Holmes was obviously intoxicated. Mr. Holmes informed the officers that he and Ms. Minnich consumed at least five large bottles of wine and seven to eight shots of tequila. Even though Mr. Holmes is not sure what he smoked when he smoked from Ms. Minnich's hookah, the possibility that the hookah contained drugs is a real probability. Also, the officers had to contact the NSA Mid-south ems for Mr. Holmes because he stated that he felt ill and thought that he might pass out due to his intoxication. The officers used Mr. Holmes' condition to apply subtle coercion to get Mr. Holmes to give a statement. Finally, the fact that the officers do not have a signed waiver form or can show, via a recording, that Mr. Holmes validly waived his *Fifth Amendment* rights.

## CONCLUSION

For the reasons stated herein, Mr. Holmes respectfully request this Court to order an evidentiary hearing on this motion and thereafter suppress any statements or admissions alleged to have been made by Mr. Holmes. Mr. Holmes prays for such other relief as the Court deems just and proper.

Respectfully submitted,

DORIS RANDLE-HOLT
FEDERAL DEFENDER

s/ Kafahni Nkrumah
Assistant Federal Public Defender
200 Jefferson, Suite 200
Memphis, TN 38103
(901) 544-3895

## CERTIFICATE OF SERVICE

This is to certify that a true copy of the foregoing Pre-trial Motion to Suppress Evidence was forwarded via the Court's electronic filing system to Greg Wagner, Assistant U.S. Attorney, 167 N. Main St., Suite 800, Memphis, TN 38103.

This, the 28th day of July 2022.

s/ Kafahni Nkrumah, Esq.
Assistant Federal Defender